**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DAVID TOM,

Plaintiff,

v. Case No.: 6:26-cv-673

PREMIUM MERCHANT FUNDING ONE, LLC,

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

## I. MOTION

Defendant PREMIUM MERCHANT FUNDING ONE, LLC ("PMF" or "Defendant"), by and through undersigned counsel, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint filed by Plaintiff David Tom ("Plaintiff" or "Tom") in its entirety, or in the alternative, to dismiss all text-based TCPA DNC claims, to dismiss the caller ID claim, the FTSA claim, and the Do Not Call policy claim, and to strike Plaintiff's per-violation treble damages demand, for failure to state a claim upon which relief can be granted, or in the further alternative, to require a more definite statement pursuant to Fed. R. Civ. P. 12(e). In support thereof, Defendant states as follows:

**GROUNDS FOR DISMISSAL**

Dismissal is warranted on the following independent grounds, each of which is set forth in detail in the Memorandum of Law incorporated herein:

I. Text messages are not "telephone calls" within the meaning of 47 U.S.C. § 227(c)(5), the sole provision under which Plaintiff's TCPA DNC claims are brought. To the extent Plaintiff's alleged TCPA violations include text messages, which the Complaint expressly confirms they do, those text-based claims fail to state a cause of action as a matter of law. This holding was reached by a Northern District of Florida court in Davis v. CVS Pharmacy, Inc., No. 4:24-cv-477-AW-MAF, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025), applying Eleventh Circuit statutory interpretation principles, and by the Central District of Illinois in Jones v. Blackstone Medical Services, LLC, No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764 (C.D. Ill. July 21, 2025), appeal filed sub nom. Steidinger v. Blackstone Medical Services, No. 25-2398 (7th Cir. Aug. 12, 2025). All text message-based TCPA DNC claims should be dismissed with prejudice.

II. The Complaint fails to state a claim for caller ID violations under 47 C.F.R. § 64.1601(e) because that regulation does not create a private right of action enforceable by a consumer in a civil lawsuit, and in the alternative because the Complaint's own allegations confirm that telephone numbers were transmitted as required.

III. The Complaint's TCPA DNC claims fail because Plaintiff does not allege that his cellular telephone number is used as a residential telephone, as required by 47 U.S.C. §

227(c) and its implementing regulations. The Complaint alleges only a "cellular telephone number" with no allegation of residential or personal use.

IV. Even as to any surviving voice call claims, the Complaint does not satisfy the § 227(c)(5) requirement of more than one call within any 12-month period by or on behalf of the same entity. The Complaint lumps together contacts spanning nearly three years and involving multiple distinct actors (PMF, Quick Funds 247, and unnamed "agents") without identifying which calls were made within any single 12-month window by the same entity.

V. Plaintiff's allegations affirmatively establish a prior business relationship and prior express invitation that undermines the blanket "unsolicited" theory. Plaintiff alleges he submitted bank statements to Quick Funds 247 at their request in connection with a financing transaction, and that PMF then called to confirm receipt and discuss a proposal. These admissions negate the unsolicited character of at least those contacts under both the TCPA and the FTSA.

VI. The Complaint's "Failure to Provide Do Not Call Policy" claim fails on its own elements: Plaintiff does not allege that he demanded PMF's written policy as the rule requires, he does not identify which contacts occurred more than ten business days after a seller-specific do-not-call request, and he does not separate contacts made before and after any opt-out request.

VII. The Complaint fails to state a claim under the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"), on multiple independent grounds: (a) Plaintiff cites the superseded 2021 version while the operative 2023 amendments apply and Plaintiff's claims do not satisfy their requirements; (b) Plaintiff failed to reply "STOP" before filing suit as required by Fla. Stat. § 501.059(8)(c) (2023); (c) the subject communications concerned commercial merchant cash advance financing, which does not constitute a "consumer good or service" within the FTSA's scope; and (d) Plaintiff's per-violation damages theory is contrary to Florida law.

VIII. Throughout the Complaint, Plaintiff demands treble damages of $1,500 per violation as a matter of right. This demand is legally unsupported under 47 U.S.C. § 227(c)(5), which provides discretionary damages of up to $500 per violation, with trebling available only upon a judicial finding of willful or knowing conduct.

IX. In the alternative, the Complaint should be required to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e). The Complaint has no separate counts, uses the plural "Defendants" though only PMF is named, blends calls and texts, mixes direct and vicarious theories, and pleads damages categories instead of claims. It is a shotgun pleading that does not provide fair notice of what conduct supports which theory of liability.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Middle District of Florida Local Rule 3.01(g), undersigned counsel certifies that counsel has conferred with Plaintiff, or has made a good faith effort to confer with Plaintiff, regarding the relief requested in this Motion. Plaintiff is proceeding pro se. Undersigned counsel

conferred with Plaintiff via electronic mail and telephone on March 31, 2026 and April 1, 2026 regarding the grounds for the relief requested in this Motion. Plaintiff indicated that he does not agree to the relief requested. Accordingly, the parties have not been able to resolve this matter without Court intervention.

## II. MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

Plaintiff David Tom, proceeding pro se, has filed a Complaint demanding $91,500 in statutory damages under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"). The Complaint is facially deficient in ways that are resolvable as a matter of law without discovery. Plaintiff's four damages categories each fail independently, and the Complaint's undifferentiated pleading renders it a shotgun pleading incapable of providing fair notice.

First, Plaintiff's TCPA DNC claim under 47 U.S.C. § 227(c)(5) fails to the extent it is premised on text messages, because text messages are not "telephone calls" within the meaning of § 227(c)(5). Second, the Complaint never alleges that Plaintiff's cellular number is used as a residential telephone, as required to invoke § 227(c)'s protections. Third, the Complaint does not satisfy the § 227(c)(5) requirement of more than one call within a 12-month period by the same entity. Fourth, Plaintiff's own allegations establish a prior business relationship and express invitation negating the unsolicited character of at least some contacts. Fifth, Plaintiff's $1,500 DNC policy claim fails on its own elements. Sixth, Plaintiff's $30,000 caller ID claim has no private right of action. Seventh, Plaintiff's $30,000 FTSA claim fails on three independent

statutory grounds. Eighth, Plaintiff's damages demand misreads 47 U.S.C. § 227(c)(5). In the alternative, the Complaint should be required to provide a more definite statement.

PMF respectfully requests that this Court dismiss the Complaint in its entirety, or in the alternative dismiss each deficient claim as set forth herein, or in the further alternative order Plaintiff to replead with a more definite statement.

## FACTUAL BACKGROUND

Plaintiff is a Florida resident whose cellular telephone number has been registered on the National Do Not Call Registry since June 28, 2003. Compl. 13. PMF is a New York limited liability company that brokers and funds commercial financing and business loan products to small and medium sized businesses in the United States of America. Compl. ¶¶ 3, 12. PMF is not a consumer lending company. The products offered are commercial business financing instruments.

Plaintiff alleges that he received approximately twenty calls and text messages from PMF and third-party agents over a period spanning February 2022 through December 2024, soliciting him for business financing. Compl. ¶¶ 18-36. Critically, Plaintiff alleges that a third-party entity identified in the Complaint as "Quick Funds 247" contacted him about financing, asked him to provide bank statements in connection with putting together a deal, and that he in fact provided those bank statements. Compl. ¶¶ 17-18. Plaintiff further alleges that PMF then called him, stated that it had received the bank statements, and was working on a financing proposal. Compl. 18. Plaintiff further alleges that he sent emails to PMF's COO and replied "don't text me" to certain text messages. Compl. ¶¶ 19, 29. Plaintiff does not allege that he replied "STOP" to any sending number as required by the operative version of the FTSA, Fla. Stat. § 501.059(10)(c). Plaintiff

does not allege that his cellular telephone number is used exclusively or primarily for residential or personal purposes.

Plaintiff demands damages as follows: (1) $30,000 for twenty TCPA violations of calls and texts under 47 U.S.C. § 227(c)(5) at $1,500 each; (2) $1,500 for failure to provide a Do Not Call policy under 47 C.F.R. § 64.1200(d); (3) $30,000 for twenty TCPA caller ID violations under 47 C.F.R. § 64.1601(e) at $1,500 each; and (4) $30,000 for twenty FTSA violations at $1,500 each. Compl. 38.

## **LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. While a court must accept well-pleaded factual allegations as true, it is not required to accept legal conclusions or formulaic recitations of the elements of a cause of action. Twombly, 550 U.S. at 555.

Pro se complaints are held to a less stringent standard than formal pleadings drafted by lawyers, but pro se litigants are still required to comply with the Federal Rules of Civil Procedure and must allege sufficient facts to state a plausible claim. Even under a liberal construction, a complaint that fails as a matter of law—because no private right of action exists or because a statutory prerequisite has not been met—must be dismissed. See Tannenbaum v.

United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) (pro se pleadings liberally construed but must still state a plausible claim); see also Twombly, 550 U.S. at 570.

## ARGUMENT

### I. TEXT MESSAGES ARE NOT "TELEPHONE CALLS" UNDER 47 U.S.C. § 227(c)(5).

Plaintiff's TCPA DNC violations under 47 U.S.C. § 227(c)(5) expressly encompass both calls and text messages. Compl. ¶¶ 17, 36, 38. This is a threshold legal error. The private right of action in § 227(c)(5) applies only to persons who have received more than one "telephone call" and text messages are not "telephone calls" within the meaning of that provision. To the extent Plaintiff's TCPA DNC claim rests on text messages, it fails to state a claim as a matter of law and must be dismissed.

### A. The Plain Text of § 227(c)(5) Is Limited to "Telephone Calls."

Section 227(c)(5) provides a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The statute does not mention text messages, SMS messages, or any analogous form of electronic communication. The term "telephone call" is not defined in the statute and therefore carries its ordinary meaning as of the time of enactment in 1991. Jones v. Blackstone Med. Servs., LLC, No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025) ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages.").

This conclusion is confirmed by comparing § 227(c)(5) with neighboring provisions of the same statute. Section 227(a)(4) defines "telephone solicitation" to mean "the initiation of a

telephone call or message." Congress's deliberate use of the phrase "telephone call or message" in § 227(a)(4), and its omission of the word "message" from the private right of action in § 227(c)(5), demonstrates that Congress knows how to extend a provision to messages when it intends to do so, and chose not to do so in § 227(c)(5). Davis v. CVS Pharmacy, Inc., No. 4:24-cv-477-AW-MAF, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025) ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines Davis's position. It shows that Congress does not use the term 'telephone call' to encompass all 'messages.'") (citing Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs., 143 F.4th 1331, 1344 (11th Cir. 2025)).

**B. Recent Federal Courts Have Held That Text Messages Are Not "Telephone Calls" Under § 227(c)(5).**

Two recent federal decisions directly on point support dismissal of all text-based TCPA DNC claims. Both courts applied ordinary principles of statutory interpretation and both reached the same conclusion that § 227(c)(5) does not reach text messages.

In Davis v. CVS Pharmacy, Inc., No. 4:24-cv-477-AW-MAF, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025), Chief Judge Allen Winsor of the Northern District of Florida granted a motion to dismiss a TCPA DNC class action predicated entirely on unwanted text messages. The court held that a text message is not a "telephone call" under § 227(c)(5), grounding its analysis in the ordinary public meaning of the term at the time of the statute's enactment: "No normal person refers to a text message, or thinks of a text message, as a 'call.' No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue.'" Id. at *1. Because the plaintiff had received only text messages, not telephone

calls, the court held he had not stated a claim under § 227(c)(5) and dismissed the case on the merits.

The Davis court rejected each of the plaintiff's counterarguments in terms directly applicable here. First, the court held that Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016), and Facebook, Inc. v. Duguid, 592 U.S. 395 (2021), did not resolve the question because both cases addressed the broader prohibition on "any call" in § 227(b)(1)(A)(iii), not the term "telephone call" in § 227(c)(5). Davis, 2025 WL 2491195, at *2. Second, the court rejected reliance on the FCC's 2003 Order, holding that even under the "appropriate respect" standard of McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146 (2025), an agency interpretation cannot override clear statutory text. Id. at *3. Third, the court expressly declined to read a private right of action more broadly than the text of the statute supports. Id.

In Jones v. Blackstone Medical Services, LLC, No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764 (C.D. Ill. July 21, 2025), appeal filed sub nom. Steidinger v. Blackstone Medical Services, No. 25-2398 (7th Cir. Aug. 12, 2025), the Central District of Illinois independently reached the identical conclusion, dismissing TCPA DNC claims premised on text messages. Applying McLaughlin Chiropractic and Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), the court independently determined that § 227(c)(5) does not apply to text messages. The court observed that the FCC's own regulations expressly include the "text message" definition only in § 64.1200(a)(9), which implements § 227(b), not § 227(c). Jones, 2025 WL 2042764, at *4. The phrases "text message" and "SMS message" are wholly absent from § 227(c)(5) and its implementing regulations. Id. at *3.

**C. This Argument Applies Directly to Plaintiff's TCPA DNC Claims.**

Plaintiff's Complaint expressly describes both telephone calls and text messages as the basis for his TCPA DNC violations. Compl. ¶¶ 17-29. Plaintiff specifically references text messages in September 2024 (Compl.¶ 26), November 2024 (Compl.¶ 31), and December 2024 (Compl. ¶¶ 28-29), and his Complaint includes a specific allegation about replying "don't text me" to text solicitations (Compl.¶ 29). Under Davis and Jones, none of these text messages can support a § 227(c)(5) claim. Only alleged telephone calls (voice calls) remain potentially actionable under § 227(c)(5), and Plaintiff has not plausibly alleged that even the remaining voice call contacts satisfy the statute's other requirements, as set forth below.

## II. THE COMPLAINT FAILS TO ALLEGE THAT PLAINTIFF IS A RESIDENTIAL TELEPHONE SUBSCRIBER, AS REQUIRED BY 47 U.S.C. § 227(c).

Section 227(c)'s protections run exclusively to "residential telephone subscribers." 47 U.S.C. § 227(c)(1) (directing FCC to protect "residential telephone subscribers' privacy rights"). The implementing regulations reinforce this limitation: 47 C.F.R. § 64.1200(c)(2) prohibits telephone solicitations to "[a] residential telephone subscriber" on the National Do Not Call Registry, and 47 C.F.R. § 64.1200(d) similarly limits its protections to "residential telephone subscribers." A plaintiff must plead facts sufficient to establish that he is a residential telephone subscriber to invoke these protections.

While the FCC has recognized that cellular telephone numbers may qualify as residential under the TCPA, that presumption is not self-executing at the pleading stage. A plaintiff asserting TCPA DNC claims based on a cellular number must allege facts demonstrating that the number is used for residential or personal—as opposed to business—purposes. See Pariseau v. Built USA, LLC, No. 8:21-cv-02204, 2022 WL 3139243, at *2 (M.D. Fla. Aug. 5, 2022) (plaintiff's claims survived because she expressly alleged exclusive residential use of her cellphone). The

Middle District of Florida's decision in Pariseau is instructive: the plaintiff there specifically pleaded that her cellular number was used exclusively for residential purposes, and that allegation was treated as necessary to sustain the claim.

Plaintiff's Complaint contains no such allegation. The Complaint alleges only that Plaintiff has a "cellular telephone number." Compl.¶ 13. It does not allege that the number is used for residential purposes, that it is not a business line, that Plaintiff uses it exclusively or primarily for personal matters, or any other fact that would establish residential character. This omission is fatal. A bare allegation that one has a cellular telephone number registered on the NDNCR is insufficient to establish residential subscriber status at the pleading stage, particularly where, as here, the Complaint's own allegations reveal that Plaintiff was engaged in business financing discussions and actively submitted business banking documents in connection with a proposed commercial transaction. Those allegations strongly suggest the phone may have been used in connection with business activity, making the absence of any residential-use allegation a meaningful pleading defect rather than a mere technicality.

Because the Complaint fails to allege facts establishing that Plaintiff is a residential telephone subscriber, all claims under 47 U.S.C. § 227(c) and its implementing regulations, including the DNC Registry claim, the internal DNC policy claim, and the caller ID claim to the extent it derives from § 227(c), fail to state a claim and must be dismissed.

## III. THE COMPLAINT FAILS TO SATISFY § 227(c)(5)'S REQUIREMENT OF MORE THAN ONE CALL WITHIN A 12-MONTH PERIOD BY THE SAME ENTITY.

Even setting aside the text message and residential subscriber defects, Plaintiff's undifferentiated violation theory fails on the face of the statute. Section 227(c)(5) authorizes a private action only for "[a] person who has received more than one telephone call within any

12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5) (emphasis added). The statute imposes two requirements: (1) more than one call within a single 12-month period, and (2) all such calls must be by or on behalf of the same entity. Plaintiff's Complaint satisfies neither requirement as pleaded.

The Complaint spans contacts from February 2022 through December 2024, a period of nearly three years, and identifies multiple distinct actors: PMF, a third-party entity identified as "Quick Funds 247," and unnamed "agents." Compl. ¶¶ 17-36. Plaintiff does not allege which specific contacts occurred within any single 12-month window. He does not identify the dates of each contact with sufficient precision to allow the Court to determine whether more than one call by the same entity falls within any discrete 12-month period. He does not separate PMF's own contacts from those of Quick Funds 247 or other agents, and he does not allege facts establishing that Quick Funds 247 and the unnamed agents acted on behalf of PMF for purposes of the statute's "by or on behalf of the same entity" requirement.

Plaintiff's demand for twenty separate violations at $1,500 each treats the entire three-year, multi-actor contact history as a single undifferentiated block of liability. That theory is facially inconsistent with § 227(c)(5)'s text. Each recoverable violation requires more than one call within a 12-month period by the same entity. The Complaint's failure to plead such predicate by identifying which calls, within which period, by which entity, means it has not plausibly alleged even a single § 227(c)(5) violation, let alone twenty. This defect independently warrants dismissal, or at minimum a more definite statement.

## IV. PLAINTIFF'S OWN ALLEGATIONS ESTABLISH A PRIOR BUSINESS RELATIONSHIP AND EXPRESS INVITATION NEGATING THE "UNSOLICITED" THEORY.

Plaintiff's theory of liability rests entirely on the proposition that all twenty-odd contacts were unsolicited. His own Complaint contradicts this. Plaintiff alleges that Quick Funds 247 contacted him about business financing options, that Quick Funds 247 asked him to provide bank statements in connection with evaluating a financing deal, and that he in fact submitted those bank statements. Compl. ¶¶ 17-18. Plaintiff further alleges that PMF then called him, specifically because it had received the bank statements, and was working on a financing proposal. Compl. 18.

Under the TCPA, a "telephone solicitation" expressly excludes "a call or message . . . to any person with whom the caller has an established business relationship" and "a call or message . . . with that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4)(A), (B). Both exclusions are implicated here. Plaintiff's voluntary submission of bank statements to Quick Funds 247 in connection with a prospective financing transaction constitutes, at minimum, an express invitation or permission for follow-up contact regarding that transaction. PMF's call after receipt of those statements and advising it was working on a proposal is the paradigm case of a call made in direct response to a customer's prior express request.

The same logic applies with equal force under the FTSA. The 2023 amendments define "unsolicited telephonic sales call" to exclude calls "to any person with whom the telephone solicitor has an established business relationship." Fla. Stat. § 501.059(1)(i) (2023). Plaintiff's submission of business banking documents to facilitate a financing transaction, and PMF's responsive communications regarding that transaction, establish precisely the kind of prior business relationship that takes those contacts outside the FTSA's scope.

These admissions do not necessarily defeat every contact alleged in the Complaint, but they fatally undermine the blanket allegation that all contacts were unsolicited. A complaint that

affirmatively pleads facts establishing consent or invitation for at least some of the contacts it complains about cannot be sustained as to an undifferentiated twenty-violation theory. This is a further independent reason why the Complaint requires either dismissal or a more definite statement that separates solicited from allegedly unsolicited contacts.

## V. PLAINTIFF'S CALLER ID CLAIM FAILS BECAUSE 47 C.F.R. § 64.1601(e) DOES NOT CREATE A PRIVATE RIGHT OF ACTION, AND IN THE ALTERNATIVE BECAUSE THE COMPLAINT AFFIRMATIVELY CONCEDES COMPLIANCE.

Plaintiff demands $30,000 based on an alleged failure to transmit accurate caller identification information in violation of 47 C.F.R. § 64.1601(e). Compl.¶ 38. This claim fails on two independent grounds.

### A. The TCPA Creates Only Two Private Rights of Action.

The TCPA creates private rights of action under only two provisions, § 227(b)(3) and § 227(c)(5). Federal regulations promulgated under the TCPA are actionable by private parties only where they are promulgated pursuant to one of these two subsections. See Charvat v. NMP, LLC, 656 F.3d 440, 449 (6th Cir. 2011). Significantly, the TCPA statute itself contains no provision requiring telemarketers to transmit caller identification information. The caller ID requirement exists solely in 47 C.F.R. § 64.1601(e), an FCC regulation promulgated in 2003. The only caller ID provision in the statute itself is 47 U.S.C. § 227(e), the Truth in Caller ID Act, which prohibits deliberate spoofing with intent to defraud and is enforceable by the FCC and Attorney General, not through private lawsuits.

### B. Section 64.1601(e) Was Not Promulgated Under Either Private-Right-of-Action Subsection.

Courts have repeatedly concluded that § 64.1601(e) was not promulgated under § 227(b) or § 227(c), the only two subsections that carry private enforcement rights. See Dobronski v. Transamerica Life Ins. Co., No. 360506 (Mich. App. 2023) ("[W]e conclude that there is no private right of action with respect to 47 CFR 64.1601(e). First and most critically, there is nothing in the statute that clearly indicates that Congress intended for private lawsuits to enforce caller-ID requirements."). Private rights of action to enforce federal law must be created by Congress, and language in a regulation cannot create a private cause of action not authorized by the statute. Alexander v. Sandoval, 532 U.S. 275, 286 (2001). The minority outlier decisions are not controlling authority in this Circuit.

Because no private right of action exists for § 64.1601(e) violations, the caller ID claim must be dismissed with prejudice. No amendment can cure this deficiency as it is a structural legal limitation, not a pleading defect.

**C. In the Alternative, Plaintiff Fails to State a Claim on the Merits Because the Regulation Requires Transmission of a Number, Not Display of a Company Name.**

Even assuming a private right of action exists, Plaintiff's caller ID claim fails on the merits. The text of 47 C.F.R. § 64.1601(e)(1) is dispositive: "For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1). The number is a mandatory unconditional requirement while the name is conditional and carrier-dependent. Plaintiff's Complaint does not allege that no number was transmitted. To the contrary, Plaintiff identifies specific telephone numbers associated with the contacts, 929-723-2608 (Compl.¶ 29) and 818-651-8099 (Compl. ¶¶ 31-32), and in Paragraph 32 states that the caller ID of 818-651-8099 displayed as "Agoura Hills, CA." That allegation concedes a number was

transmitted and displayed. Plaintiff's grievance is with the name label, not with the absence of a number, which is not a violation of the regulation's actual requirements. The caller ID claim must be dismissed on the merits as well.

## VI. PLAINTIFF'S "FAILURE TO PROVIDE DO NOT CALL POLICY" CLAIM FAILS ON ITS OWN ELEMENTS.

Plaintiff separately demands $1,500 for an alleged "Failure to provide Do Not Call Policy" under 47 C.F.R. § 64.1200(d). Compl.¶ 38. Assuming without conceding that a private right of action exists under § 64.1200(d), an issue on which courts are not uniform, though the Third, Sixth, and Eleventh Circuits have found that § 64.1200(d) was promulgated under § 227(c) and therefore carries the § 227(c)(5) private right of action, this claim independently fails because Plaintiff has not alleged the elements necessary to state a violation.

Section 64.1200(d) requires telemarketers to maintain a written do-not-call policy and to make that policy available upon demand. 47 C.F.R. § 64.1200(d)(1). The regulation does not require a telemarketer to proactively send its written policy to every person it contacts. The obligation to provide the policy is triggered by a demand from the consumer. Plaintiff does not allege anywhere in the Complaint that he demanded PMF's written do-not-call policy. He alleges that he sent emails to PMF's COO asking that contacts stop, and that he replied "don't text me" to certain messages. Compl. ¶¶ 19, 22, 25, 29, 30. Neither of these constitutes a demand for a written do-not-call policy within the meaning of the regulation. The failure to allege that he ever demanded the policy is fatal to this claim.

Second, the Complaint does not separate any contacts made before an opt-out request from contacts made after. Contacts made before Plaintiff made any seller-specific do-not-call request cannot support a § 64.1200(d) violation at all. The Complaint's failure to distinguish

pre-request from post-request contacts means it has not pleaded facts sufficient to identify a plausible § 64.1200(d) violation. For all three reasons, the Do Not Call policy claim must be dismissed.

## VII. PLAINTIFF'S FTSA CLAIMS FAIL ON THREE INDEPENDENT GROUNDS.

Plaintiff's FTSA claims are deficient in three independently fatal respects, each of which standing alone warrants dismissal with prejudice.

### A. Plaintiff Cites the Superseded 2021 FTSA; the 2023 Amendments Govern and Plaintiff's Claims Do Not Satisfy Their Requirements.

Plaintiff's Complaint cites the FTSA "as amended by Senate Bill No. 1120 (effective July 1, 2021)." Compl. ¶¶ 2, 5. This is the superseded version of the statute. The Florida Legislature substantially amended the FTSA through H.B. 761, signed by Governor DeSantis on May 25, 2023. The 2023 amendments expressly provide that they "apply to any suit filed on or after the effective date of this act." H.B. 761, § 4 (Fla. 2023). This suit was filed on February 13, 2026, so the 2023 version of Fla. Stat. § 501.059 governs all of Plaintiff's FTSA claims.

The 2023 amendments made three changes directly relevant to this case. First, they narrowed the definition of "automated system" from "selection or dialing" (disjunctive) to "selection and dialing" (conjunctive) of telephone numbers. Fla. Stat. § 501.059(8)(a) (2023). Second, they limited FTSA liability to "unsolicited telephonic sales calls," excluding calls to persons with whom the telephone solicitor has a prior or existing business relationship. Third, and critically for text message claims, they imposed a mandatory STOP safe harbor as a pre-suit requirement. See Fla. Stat. § 501.059(8)(c) (2023). Plaintiff's Complaint makes no attempt to satisfy the requirements of the operative 2023 statute.

**B. Plaintiff Failed to Satisfy the Mandatory STOP Safe Harbor Before Filing Suit.**

Fla. Stat. § 501.059(8)(c) (2023) requires that before a called party may bring an FTSA action for damages arising from text message solicitations, the called party must reply "STOP" to the sender of the text message. The called party may bring an action only if text messages continue after a fifteen-day cure period following that reply. Plaintiff does not allege that he replied "STOP" to any sending number. Plaintiff alleges that he replied "don't text me" to certain text messages, Compl.¶ 29, and separately sent emails to PMF's COO. Compl. ¶¶ 19, 22, 25, 30. Neither satisfies the statutory STOP safe harbor. Because Plaintiff failed to satisfy this mandatory pre-suit prerequisite, all FTSA claims arising from text messages are barred on their face and must be dismissed with prejudice. This deficiency cannot be cured by amendment.

**C. Commercial Merchant Cash Advance Financing Is Not a "Consumer Good or Service" Within the FTSA's Definitional Scope.**

The FTSA applies only to "telephonic sales calls," defined as calls "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(1)(j). "Consumer goods or services" is expressly defined as real property or personal property "normally used for personal, family, or household purposes." Fla. Stat. § 501.059(1)(c). PMF's products are commercial financial products used exclusively for business purposes. The Complaint itself acknowledges this, referring to the solicitations as "merchant cash advance financing," "business expansion" financing, "consolidate current lending debt," and "long-term business financing." Compl. ¶¶ 18, 26, 28. Plaintiff even describes the solicitations as "financing options for a business." Compl.  16. Commercial business financing products are not property normally used for personal, family, or household purposes. Because PMF's communications concerned

products that fall entirely outside the FTSA's definition of "consumer goods or services," the FTSA does not apply and the FTSA claim must be dismissed with prejudice in its entirety.

**D. Even If the FTSA Applied, Plaintiff's Per-Violation Damages Theory Is Contrary to Florida Law.**

Even assuming arguendo that the FTSA applied, Plaintiff's demand for twenty separate violations at $1,500 each is contrary to the plain text of the statute and Florida case law. Fla. Stat. § 501.059(10)(a) provides that a called party may recover "actual damages or $500, whichever is greater." Unlike the federal TCPA, which expressly provides for "$500 in damages for each such violation," 47 U.S.C. § 227(c)(5)(B), the FTSA omits the words "for each such violation." This deliberate omission is legally significant. See Leigue v. Everglades College, No. 2022-008872-CA-01 (Fla. 11th Jud. Cir. Ct. Jan. 3, 2024) (holding that FTSA statutory damages are limited to $500 per action, or $1,500 if trebled, not per violation). Plaintiff's per-violation stacking theory has been squarely rejected by Florida courts and should be stricken.

**VIII. PLAINTIFF'S TREBLE DAMAGES DEMAND MISSTATES THE LAW UNDER 47 U.S.C. § 227(c)(5).**

Throughout the Complaint, Plaintiff demands $1,500 per violation across all TCPA claims as a matter of right. Compl.¶ 38. This demand fundamentally misreads 47 U.S.C. § 227(c)(5), and the Court should strike or limit Plaintiff's damages demand accordingly.

First, § 227(c)(5) provides for damages of "**up to** $500" per violation, not $500 as a floor. The statute's "up to" language makes clear that the award is discretionary, and courts may award less than $500 per violation. This contrasts with § 227(b)(3), which sets a $500 minimum per

violation. Because Plaintiff brought his TCPA claims exclusively under § 227(c)(5), he is not entitled to any minimum damages guarantee.

Second, the $1,500 figure Plaintiff demands represents trebled damages, which are available under § 227(c)(5) only if "the court finds that the defendant willfully or knowingly violated" the applicable regulations. 47 U.S.C. § 227(c)(5). This requires an affirmative judicial finding. Moreover, even where willfulness is found, the court "may" treble damages but is not required to. The statute uses permissive rather than mandatory language, preserving full judicial discretion.

Third, to the extent Plaintiff claims willfulness based on PMF's failure to respond to his emails to the COO, this theory is insufficient as a matter of law. Unanswered internal emails to a non-legal officer, without more, do not establish the deliberate, knowing disregard of a legal obligation required for a willfulness finding under the TCPA. The Court should strike Plaintiff's per-violation treble damages demand and clarify that any damages recoverable under § 227(c)(5), if liability is established, are discretionary up to $500 per violation, subject to trebling only upon an express judicial finding of willful or knowing conduct.

## IX. IN THE ALTERNATIVE, THE COURT SHOULD ORDER A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(e).

If the Court declines to dismiss the Complaint in its entirety, it should at minimum order Plaintiff to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Rule 12(e) authorizes a court to order repleading where "a pleading to which a responsive pleading is allowed is so vague or ambiguous that a party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Complaint satisfies this standard.

The Complaint has no separate counts. Although PMF is the only named defendant, the Complaint repeatedly uses the plural "Defendants," making it impossible to determine whether each allegation is directed at PMF, Quick Funds 247, or unnamed agents. It blends calls and texts without separating them by legal theory, despite the fact that text messages and voice calls are subject to materially different legal standards under § 227(c)(5). It mixes direct liability allegations against PMF with vicarious liability allegations based on the conduct of Quick Funds 247 and unnamed agents, without identifying the legal theory underlying the agency relationship. It pleads damages categories—$30,000 for DNC violations, $30,000 for caller ID, $30,000 for FTSA—rather than separately stated claims. It is also chronologically incoherent, interweaving contacts from different actors across a nearly three-year period without organizing them by entity or time window as § 227(c)(5) requires.

Courts in the Eleventh Circuit treat a more definite statement as the appropriate remedy for shotgun pleadings of this kind. See Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (describing categories of shotgun pleadings and courts' authority to require repleader). Requiring a more definite statement would allow the Court to resolve any reluctance to dismiss a pro se complaint with prejudice at the pleading stage, while ensuring that any repleaded complaint presents PMF with fair notice of what it is alleged to have done, which contacts are attributed directly to PMF versus third parties, which contacts are alleged to be voice calls versus text messages, and which contacts fall within a single 12-month period by the same entity. PMF cannot meaningfully prepare a responsive pleading or evaluate its defenses against a complaint this indeterminate.

## CONCLUSION

For the foregoing reasons, Defendant PREMIUM MERCHANT FUNDING ONE, LLC respectfully requests that this Court dismiss the Complaint in its entirety with prejudice, or in the alternative:

(a) Dismiss all text message-based TCPA DNC claims under 47 U.S.C. § 227(c)(5) with prejudice, because text messages are not "telephone calls" within the meaning of § 227(c)(5). Davis v. CVS Pharmacy, Inc., 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025); Jones v. Blackstone Med. Servs., LLC, 2025 WL 2042764 (C.D. Ill. July 21, 2025);

(b) Dismiss all claims under 47 U.S.C. § 227(c) and its implementing regulations with prejudice, because Plaintiff fails to allege that he is a residential telephone subscriber as required by 47 U.S.C. § 227(c)(1) and 47 C.F.R. §§ 64.1200(c)(2) and 64.1200(d);

(c) Dismiss the TCPA DNC claims with prejudice because the Complaint does not plausibly allege more than one call within a 12-month period by or on behalf of the same entity as required by 47 U.S.C. § 227(c)(5);

(d) Dismiss the caller ID claim with prejudice for lack of a private right of action under 47 C.F.R. § 64.1601(e), and in the alternative because the Complaint's own allegations establish compliance with the regulation's actual requirements;

(e) Dismiss the Do Not Call policy claim with prejudice because Plaintiff does not allege he demanded PMF's written policy, does not identify contacts occurring more than ten business days after a seller-specific opt-out request, and does not separate pre- and post-request contacts;

(f) Dismiss the FTSA claims with prejudice on the grounds that (i) the 2023 amendments govern and Plaintiff's claims do not satisfy their requirements; (ii) Plaintiff failed to satisfy the mandatory STOP safe harbor prerequisite; and/or (iii) commercial merchant

cash advance financing is not a consumer good or service within the FTSA's definitional scope;

(g) Strike Plaintiff's per-violation treble damages demand as inconsistent with the discretionary damages framework of 47 U.S.C. § 227(c)(5);

(h) In the alternative, order Plaintiff to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e) separating direct from vicarious claims, calls from texts, PMF contacts from third-party contacts, and identifying which contacts fall within a single 12-month period by the same entity; and

(i) Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Bradley Yucht*_________
Bradley Yucht
Florida Bar No.: 1039882
Attorney for Defendant Premium Merchant Funding One, LLC
Telephone: 646-845-1892
Email: byucht@pmfus.com

Date: April 2, 2026

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 2, 2026, the foregoing Defendant's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law Pursuant to Fed. R. Civ. P. 12(b)(6) was filed with the Clerk of the United States District Court for the Middle District of Florida via CM/ECF. Because Plaintiff David Tom is proceeding pro se and is not a registered CM/ECF user, a true and correct copy of the foregoing has been served on Plaintiff by the following means on the same date:

(1) First-class U.S. Mail to: David Tom, 1058 Herne Ave, Palm Bay, Florida 32907; and

(2) Electronic mail to: david.m.tom@gmail.com.

*/s/ Bradley Yucht*
Bradley Yucht